UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MICHAEL JONES,

        Plaintiff,                      Case No. 1:24-cv-120

v.                                        Honorable Jane M. Beckering

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility and the Ingham County Correctional

Facility in Mason, Michigan. Plaintiff sues the Michigan Department of Corrections (MDOC), Ingham County Deputy Justin Hagerman, and MTU Corrections Officers Unknown Alexander, Unknown Horn, and Unknown Amsley.

In Plaintiff's amended complaint, he alleges that on March 11, 2020, while he was confined at the Ingham County Correctional Facility, Defendant Hagerman "misplaced and/or stole" his personal property, including a pair of Nike running shoes and several books that should have been listed on a packing slip. (ECF No. 7, PageID.16.) Plaintiff states that he never received a packing slip. (*Id.*)

On December 7, 2023, Plaintiff was transferred to MTU. Plaintiff states that prior to his transfer, he was given a packing slip listing a "'Peep Show' Goliath book," but that once he arrived at MTU, he was given a packing slip with no mention of that book. (*Id.*) Plaintiff states that his book was not in his green duffel bag. Plaintiff blames the MTU property room officer. (*Id.*)

Plaintiff next alleges that on January 31, 2024, Defendant Alexander came to Plaintiff's housing unit and while conducting an inspection of Plaintiff's cell, took a pair of green shorts and a thermal top belonging to Plaintiff. (*Id.*) Finally, Plaintiff claims that on February 4, 2024, Defendant Amsley refused to give him his breakfast meal because it took him twenty-seven seconds to come out of his cell. (*Id.*)

The Court construes Plaintiff's complaint to raise claims under the Fourth Amendment, the Fourteenth Amendment Due Process Clause, and the Eighth Amendment. As relief, Plaintiff seeks "the grand prize," which the Court construes as a request for monetary damages. (*Id.*, PageID.17.)

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Defendant MDOC**

Plaintiff names the MDOC as a Defendant in this case. Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their

departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity.

In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the MDOC also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

### B. Defendant Horn

Plaintiff lists Corrections Officer Unknown Horn as a defendant in this case, but fails to mention Defendant Horn in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se*

complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff fails to allege any wrongdoing on the part of Defendant Horn, Defendant Horn is properly dismissed from this action.

## C. Fourth Amendment

Plaintiff claims that Defendant Alexander took a pair of green shorts and a thermal top belonging to Plaintiff during a cell search. In *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court considered and rejected a Fourth Amendment claim based upon a prison official searching a prisoner's cell and destroying some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Supreme Court disagreed.

First, the Supreme Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal

5

security." *Id.* at 523–24 (internal citation omitted). The Supreme Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28. For similar reasons, the Supreme Court held that the Fourth Amendment "does not protect against seizures in a prison cell." *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Here, Plaintiff does not provide any allegations about whether he was permitted to have the items that Defendant Alexander removed from Plaintiff's cell during the search. Regardless, under the circumstances alleged in the complaint, applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit the search of Plaintiff's cell, and it did not prevent the confiscation of the items in Plaintiff's cell. Accordingly, Plaintiff's Fourth Amendment claim will be dismissed.

    **D.**    **Fourteenth Amendment Due Process**

As to Plaintiff's Fourteenth Amendment due process claims, Plaintiff's claim that Defendants Hagerman and Alexander deprived him of property without due process of law are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation,

while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Oct. 2, 2023); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. MICH. COMP. LAWS. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim against either Defendant Hagerman or Defendant Alexander.[1]

---

[1] Moreover, for the same reasons, Plaintiff's allegations regarding the MTU property room officer, who may or may not be Defendant Unknown Horn, are also barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

E. **Eighth Amendment**

Finally, Plaintiff claims that on February 4, 2024, Defendant Amsley improperly deprived Plaintiff of his breakfast meal. "The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Constitution "does not mandate comfortable prisons," however. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim). Plaintiff's allegation that Defendant Amsley deprived him of one meal falls short of stating a claim under the objective

8

prong of the deliberate-indifference standard. Consequently, Plaintiff does not state a plausible claim. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   April 17, 2024                     /s/ Jane M. Beckering
                                            Jane M. Beckering
                                            United States District Judge